**SHOOK, HARDY & BACON L.L.P.**
Tammy B. Webb (SBN 227593)
tbwebb@shb.com
Aubrey Kramer (SBN 359426)
akramer@shb.com
Caitlin Crable (SBN 363598)
ccrable@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1904 | Fax: (415) 391-0281

Mitchell F. Engel (*Pro Hac Vice*)
mengel@shb.com
2555 Grand Blvd
Kansas City, MO 64108
Tel: (816) 474-6500 | Fax: (816) 421-5547

*Attorneys for Defendant The Campbell's Company*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARGARET PEGGI LOUISE GARVEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CAMPBELL'S COMPANY,<br><br>Defendant. | Case No. 3:26-cv-03097-JD<br><br>**DEFENDANT THE CAMPBELL'S COMPANY'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: September 24, 2026<br>Time: 11:00 a.m.<br>Location: Courtroom 11, 19th Floor<br>Judge: Honorable James Donato |

1

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**
**<u>TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:</u>**

PLEASE TAKE NOTICE that on September 24, 2026, at 11:00 a.m., or as soon thereafter as may be heard, before the Honorable James Donato, in Courtroom 11, 19th Floor, Defendant The Campbell's Company will and hereby does move to dismiss Plaintiff Margaret Peggi Louise Garvey's Class Action Complaint. Campbell's motion to dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff Margaret Peggi Louise Garvey purchased a single bowl of Campbell's Microwavable Homestyle Chicken Noodle Soup in June 2025 from Amazon. She claims this (and numerous other Campbell's soup products she did not purchase) (the "Products") are misbranded because the label says the Products are "Microwavable," but, according to Plaintiff, the Products, when microwaved, release microplastics at levels harmful to human health. Plaintiff seeks to represent a nationwide class and California subclass of all consumers who purchased the Products "that contain the 'Microwavable' representation on their labels and/or packaging, in all sizes, variations, packs, sets, and bundles."

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and all other pleadings and papers on file herein.

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

1.      Whether the Court lacks subject matter jurisdiction because Plaintiff has not alleged sufficient facts demonstrating Article III standing?

2.      Whether Plaintiff's claims are preempted where the USDA specifically approved the Product's label and the FDA has approved polypropylene as safe for food contact at or above 212 degrees?

3.      Whether Plaintiff has stated a claim upon which relief can be granted for the alleged violations of California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and California's Consumer Legal Remedies Act ("CLRA") when Plaintiff does not plausibly allege an "unreasonable safety hazard" or that the defect was material to the Products' functions, and Plaintiff does not allege Campbell's had knowledge of the alleged defect?

4.      Whether Plaintiffs' breach of warranty claims fail because they are based on the same

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

underlying facts and the same flawed theories as her statutory fraud claims?

5.      Whether Plaintiff's derivative unjust enrichment claim necessarily fails because her state law statutory claims fail?

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.     Microplastics Are Inescapable. .................................................................................. 2

II.    Plaintiff's Purchase of Campbell's Soup and Her Allegations of Deception. .................... 2

III.   The Alleged Factual Basis for the Products' Purported "Risks." ................................... 2

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.     Plaintiff Has Not Alleged Sufficient Facts to Demonstrate Article III Standing. .............. 4

    A.    Plaintiff does not plausibly allege the Products leach harmful levels of
         microplastics. ...........................................................................................4

         1.    Plaintiff's Complaint contains no allegations regarding the level, size, or
             type of microplastics released by the Products. ......................................... 4

         2.    No allegations regarding an unsafe threshold level of microplastics. ........ 6

         3.    No allegations microplastics from the Products exceed an unsafe
             threshold. .......................................................................................... 6

    B.    Plaintiff does not plausibly allege that she paid a price premium for the
         Campbell's product she purchased. ...........................................................7

    C.    Plaintiff lacks standing to seek injunctive relief because there is no reasonable
         likelihood of future injury. ........................................................................8

II.    Plaintiff's Claims are Preempted by the USDA and FDA. ............................................. 8

    A.    Plaintiff's claims are preempted by the USDA's Federal Meat Inspection Act and
         the Poultry Products Inspection Act. ..........................................................8

    B.    Plaintiff's claims are preempted by FDA's Federal Food, Drug and Cosmetic
         Act. ........................................................................................................9

III.   Plaintiff Fails to State a Claim Under the UCL, FAL, or CLRA. ................................... 10

    A.    Plaintiff's statutory fraud claims fail Rule 9(b)'s heightened pleading standard. .10

i

B.    Plaintiff's "misrepresentation" claims fail because Plaintiff fails to plead a false statement. ...........................................................................................................11

C.    Plaintiff's "fraudulent omission" claims fail because the Complaint does not plausibly allege the defect created an unreasonable safety hazard or that the defect is material and central to the Products' function........................................12

1.    Plaintiff does not allege an unreasonable safety hazard. ......................... 13

2.    Plaintiff does not allege a defect central to the Products' function. ......... 13

D.    Plaintiff does not allege Campbell's knew or should have known of the purported defect.............................................................................................................14

IV.    Plaintiff's Breach of Warranty Claims Fail for the Same Reasons as Plaintiff's Statutory Fraud Claims.................................................................................................................. 14

V.    Plaintiff's Unjust Enrichment Claim is Wholly Derivative and Fails for the Same Reasons as Plaintiff's Statutory Fraud Claims................................................................. 15

CONCLUSION............................................................................................................... 15

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arroyo v. Chattem, Inc.*,
    926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................3

*Baker v. Nestle S.A.*,
    2019 WL 960204 (C.D. Cal. Jan. 3, 2019) .......................................................................1, 10

*Barnes v. Campbell Soup Co.*,
    2013 WL 5530017 (N.D. Cal. July 25, 2013)..........................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................3

*Biederman v. FCA US LLC*,
    765 F. Supp. 3d 920 (N.D. Cal. 2025) ..................................................................................11

*Boysen v. Walgreen Co.*,
    2012 WL 2953069 (N.D. Cal. July 19, 2012)..........................................................................6

*Bruno v. BlueTriton Brands, Inc.*,
    2024 WL 2794098 (C.D. Cal. May 6, 2024) ..................................................................1, 8, 9

*Correia v. Johnson & Johnson Consumer Inc.*,
    2019 WL 2120967 (C.D. Cal. May 9, 2019) .........................................................................12

*Cortez v. Handi-Craft Co.*,
    2025 WL 1452561 (N.D. Cal. Apr. 29, 2025) ................................................................ *passim*

*Daly v. Danone Waters of Am., LLC*,
    2024 WL 4679086 (N.D. Ill. Nov. 5, 2024) ............................................................................1

*Daly v. Wonderful Co.*,
    2025 WL 672913 (N.D. Ill. Mar. 3, 2025)................................................................1, 4, 7, 13

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ................................................................................................11

*Felsenthal v. Medela LLC*,
    2026 WL 879337 (N.D. Ill. Mar. 30, 2026).....................................................................1, 12

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ..................................................................7, 13

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

*Herron v. Best Buy Co. Inc.*,
924 F. Supp. 2d 1161 (E.D. Cal. 2013)........................................................................................15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..............................................................................................4, 10

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................................................................................................3

*Krakauer v. Recreational Equip., Inc.*,
2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ........................................................................5

*Krystofiak v. BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024) ..................................................................................11, 13

*Kuenzig v. Kraft Foods, Inc.*,
2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) ............................................................................9

*La Barbera v. Olé Mexican Foods, Inc.*,
2023 WL 4162348 (C.D. Cal. May 18, 2023) .............................................................................7

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ....................................................................................................3

*Meaunrit v. ConAgra Foods Inc.*,
2010 WL 2867393 (N.D. Cal. July 20, 2010)..............................................................................9

*Miller v. Philips N. Am. LLC*,
2025 WL 582160 (N.D. Cal. Feb. 20, 2025) .....................................................................8, 12, 15

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......................................................................................................12

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) .................................................................................................7

*Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*,
962 F.3d 1082 (9th Cir. 2020) ....................................................................................................1

*Pels v. Keurig Dr. Pepper, Inc.*,
2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ..............................................................................5

*In re Plum Baby Food*,
2024 WL 1354447 ...............................................................................................................13, 14

*In re Plum Baby Food Litig.*,
637 F. Supp. 3d 210 (D.N.J. 2022).............................................................................................7

*Safari v. Whole Foods Mkt. Serv., Inc.*,
2023 WL 5506014 (C.D. Cal. July 24, 2023).............................................................................5

iv

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ......................................................................................4, 10

*Slowinski v. BlueTriton Brands, Inc.*,
744 F. Supp. 3d 867 (N.D. Ill. 2024) ..........................................................................1, 2, 12

*Smith v. LG Elecs. USA, Inc.*,
2014 WL 989742 (N.D. Cal. Mar. 11, 2014)........................................................................15

*In re Trader Joe's Co. Dark Chocolate Litig.*,
726 F. Supp. 3d 1150 (S.D. Cal. 2024)...........................................................................11, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...................................................................................................................3

*Watkins v. MGA Ent., Inc.*,
550 F. Supp. 3d 815 (N.D. Cal. 2021) ....................................................................................15

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ...................................................................................................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .....................................................................................3

**Statutes**

21 U.S.C. § 343-1(a)(5) .................................................................................................................9

21 U.S.C. § 451.........................................................................................................................8, 9

21 U.S.C. § 467(e) .........................................................................................................................9

21 U.S.C. § 601..............................................................................................................................8

21 U.S.C. § 602..............................................................................................................................9

21 U.S.C. § 678..............................................................................................................................9

Federal Food, Drug, and Cosmetic Act ..............................................................................8, 9, 10

Federal Meat Inspection Act and the Poultry Products Inspection Act .........................................8

**Other Authorities**

9 C.F.R. § 317.4(a).........................................................................................................................9

9 C.F.R. § 381.15 .......................................................................................................................8, 9

21 C.F.R. § 176.170.....................................................................................................................10

21 C.F.R. § 177.1520.................................................................................................................3, 10

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

Article III ...............................................................................................................................3, 4, 5, 6

"Microplastics and Nanoplastics in Foods" (July 24, 2024) (the "FDA Statement"),
     https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-
     nanoplastics-foods.....................................................................................................................1

Rule 8(a)..............................................................................................................................10

Rule 9(b) ......................................................................................................................4, 10, 15

Rule 12(b)(1)...........................................................................................................................3, 4

Rule 12(b)(6).............................................................................................................................3

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff claims the "Microwavable" statement on the label of Campbell's ready-to-eat soup bowls (the "Products") is misleading because, according to Plaintiff, the Products release unsafe levels of microplastics when microwaved. However, the Court will search the Complaint in vain for any allegations regarding (1) the quantity, size, or shape of the microplastics that allegedly leach from the Products, (2) the threshold level of microplastics that would render a product unsafe, or (3) whether the Products exceed that threshold when microwaved. This is particularly problematic for Plaintiff because the FDA has concluded that "[t]here is not sufficient scientific evidence to show that microplastics and nanoplastics from plastic food packaging migrate into foods and beverages" and the "current scientific evidence does not demonstrate that levels of microplastics or nanoplastics detected in foods pose a risk to human health." "Microplastics and Nanoplastics in Foods" (July 24, 2024) (the "FDA Statement").[1]

Plaintiff's claims are also preempted. The Product Plaintiff purchased bears the USDA seal of approval on the label signifying that the label is neither false nor misleading. And FDA regulations specify that polypropylene—the polymer used in the Product's containers—"may be safely used" as food-contact substances, including at high temperatures.

The Court should dismiss the Complaint as courts routinely dismiss analogous consumer fraud microplastics cases involving similar products and allegations. *Cortez v. Handi-Craft Co.*, 2025 WL 1452561 (N.D. Cal. Apr. 29, 2025) (baby bottles); *Bruno v. BlueTriton Brands, Inc.*, 2024 WL 2794098 (C.D. Cal. May 6, 2024) (bottled water); *Baker v. Nestle S.A.*, 2019 WL 960204 (C.D. Cal. Jan. 3, 2019) (bottled water); *Felsenthal v. Medela LLC*, 2026 WL 879337 (N.D. Ill. Mar. 30, 2026) (baby bottles); *Daly v. Wonderful Co.*, 2025 WL 672913 (N.D. Ill. Mar. 3, 2025) (bottled water); *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867 (N.D. Ill. 2024) (bottled water); *Daly v. Danone Waters of Am., LLC*, 2024 WL 4679086 (N.D. Ill. Nov. 5, 2024) (bottled water).

---

[1] The FDA Statement is available online at https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods. In ruling on a motion to dismiss, the Court may take judicial notice of government websites. *See Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020).

1

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

**BACKGROUND**

**I.      Microplastics Are Inescapable.**

The reality is "microplastics are everywhere." *Slowinski*, 744 F. Supp. 3d at 874. Microplastics are "small plastic particles less than 5 millimeters in diameter." Compl. ¶ 30. The FDA has noted microplastics "can be found throughout the environment from land to streams and inland waterways to the coast and the ocean," have been detected in "several foods, including salt, seafood, sugar, beer, bottled water, honey, milk, and tea," and have been detected in "the air." FDA Statement. "Microplastics have been found in every ecosystem on the planet, from the Antarctic tundra to tropical coral reefs, and have been found in food, beverages, and human and animal tissue." *Slowinski*, 744 F. Supp. 3d at 874. They are so ubiquitous that "[t]hey're inescapable." *Id*.

**II.      Plaintiff's Purchase of Campbell's Soup and Her Allegations of Deception.**

Plaintiff claims she purchased a single bowl of Campbell's Microwaveable Homestyle Chicken Noodle Soup in June 2025 from Amazon. Compl. ¶ 27(b). Plaintiff alleges she was deceived by the statement "Microwavable" on the Products' labels and by Campbell's failure to inform consumers that the Products "leach harmful microplastics directly into soup" when microwaved. *Id.* ¶¶ 46, 58. She claims all goods made of polypropylene plastic, including the Products, are sources of microplastics and consumers are exposed to "serious health risks" when the Products are used as intended. *Id.* ¶¶ 2, 11. Based on these allegations, and without citing to any specific testing or studies of the Products, Plaintiff contends the Products are not "safe" and she was misled into "believing [the Products] are free of risks associated with microwave heating as directed." *Id*. ¶ 15.

**III.      The Alleged Factual Basis for the Products' Purported "Risks."**

Plaintiff claims the "microwavable" representation on the Products' labels is false and misleading, but she does not allege she had any issues microwaving the Product or that she was injured by it. *Id.* ¶ 2. Instead, Plaintiff alleges the label leads consumers "to believe the Products can be safely heated in microwaves without risk," but, according to Plaintiff, scientific studies show that the Product's polypropylene containers pose health "risks." *Id.* Contrary to Plaintiff's doomsday characterization of the alleged "risks" associated with microplastics in polypropylene, the scientific understanding of microplastics—including their impact on human health—does not support Plaintiff's

2

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

claims. *Id.* The FDA has approved polypropylene for use in food containers, 21 C.F.R. § 177.1520, and, in response to the recent surge in consumer fraud microplastics litigation, issued a statement addressing microplastics in food packaging material, in which it found the risks alleged by Plaintiff speculative and unsupported. *See* FDA Statement.

The citations in Plaintiff's Complaint confirm science has not established that microplastics are harmful to human health. *See, e.g.*, Marfella 2024 (cited in Compl. n.2) (concluding microplastics "are emerging as a *potential* risk factor," but "[d]irect evidence that this risk extends to humans is lacking"); Balch 2024 (cited in Compl. n.23) ("[E]xperts say that little is known and understood about what impact these microplastics have on human health.").[2] Put simply, there is no science to support Plaintiff's claim of the alleged harm to human health contained in her Complaint.

## LEGAL STANDARD

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021). For a Rule 12(b)(1) facial attack on subject-matter jurisdiction, a court applies the same standard as it would a motion to dismiss under Rule 12(b)(6). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

To survive a Rule 12(b)(6) motion to dismiss Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Thus, "[w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."" *Id.*

---

[2] "Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading" on a motion to dismiss if "(1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) no party questions their authenticity." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1078 (C.D. Cal. 2021) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

Under Rule 9(b), Plaintiff must plead her fraud claims with particularity. To meet Rule 9(b)'s heightened pleading standard, a plaintiff must identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). These standards apply to Plaintiff's FAL, UCL, and CLRA claims. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

# ARGUMENT

## I.    Plaintiff Has Not Alleged Sufficient Facts to Demonstrate Article III Standing.

### A.    Plaintiff does not plausibly allege the Products leach harmful levels of microplastics.

Plaintiff's Complaint must be dismissed under Rule 12(b)(1) for lack of Article III standing because she fails to plead facts establishing (1) the level of microplastics released when the Products are microwaved, (2) the threshold level of microplastics that would render the Products "unsafe," or (3) that the Products exceed this (unspecified) level of microplastics when microwaved. Failure to plead these basic requirements demands dismissal. As one court explained when dismissing a similar microplastics consumer fraud case:

> Allowing a suit of this type to proceed on this basis would basically open the door to enabling any purchaser of any consumable product to file a lawsuit simply saying, "I bought product X, and it contains microplastics" (or "forever" chemicals, or heavy metals, or whatever) and thereby get past a motion to dismiss and into discovery and class certification proceedings. Given the context (consumable products claimed to include contaminants), plausibility requires more.

*Daly*, 2025 WL 672913, at *7.

#### 1.    *Plaintiff's Complaint contains no allegations regarding the level, size, or type of microplastics released by the Products.*

To establish injury-in-fact under Article III, "Plaintiff must specifically allege that [the purportedly harmful substance] at the level present in [the challenged product] makes statements about the product's safety false or misleading." *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012). The threshold standing question is thus whether Plaintiff has pleaded facts showing the Campbell's Product she purchased released harmful quantities of microplastics when microwaved

---

4

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

such that the statements on the labels were misleading. She has not. The Complaint does not allege facts showing any of the Products—including the specific bowl Plaintiff purchased—*actually* releases microplastics when microwaved, much less that they do so at levels that pose a safety risk to humans. Plaintiff cites no third-party testing or studies that Campbell's Products release microplastics when microwaved (let alone at what level), nor does Plaintiff allege that she independently tested any Campbell's Products. *See generally* Compl.

Plaintiff's failure to plead what levels of microplastics (if any) are released from the Products when used—or that those (unspecified) levels pose a risk to human health—have led courts to dismiss similar consumer fraud claims. *See, e.g., Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water he purchased contained violative arsenic levels."); *Safari v. Whole Foods Mkt. Serv., Inc.*, 2023 WL 5506014, at *5, 8 (C.D. Cal. July 24, 2023) (no standing where plaintiff failed to allege a sufficient factual basis to infer that "the beef she purchased actually contained antibiotics"); *Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *4-8 (W.D. Wash. Mar. 29, 2024) (it was "not enough" to demonstrate standing by alleging plaintiff's product consisted of material similar to that of other products that were tested and showed dangerous levels of PFAS).

Because Plaintiff does not have evidence the Products release microplastics at harmful levels, Plaintiff relies instead on inapposite articles discussing third-party testing of other products. Plaintiff, however, ignores key product-specific variables that inevitably impact migration, including food type, heating conditions, and storage temperature, all which the studies identify as critical. *See, e.g.,* Guo 2024 (cited in Compl. n.38) (noting the temperature and food types were key attributes for elevating microplastic migration); Hussain 2023 (cited in Compl. n.28) (same); Xia 2025 (cited in Compl. n.36) (concluding that storage temperature and heating process majorly influenced the size and fragmentation of microplastics released from food containers). Nowhere does Plaintiff allege the physical properties of the Campbell's Products are sufficiently similar to the products in the studies she cites. Rather, Plaintiff assumes, without support, that the products all behave the same. This is legal error as such unsupported extrapolation from dissimilar products is insufficient to confer Article III standing. *See, e.g., Safari*, 2023 WL 5506014, at *8 (no standing where the plaintiff cited

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

testing showing that other beef products contained antibiotics but failed to show that "the beef she purchased actually contained antibiotics"). This assumption is also scientifically flawed as, for example, a study Plaintiff relies on expressly states that its results cannot be extrapolated to other products because "there is [a] lack of standardized migration testing for [microplastics] from food packages." *See* Guo 2024 (cited in Compl. n.38).

### 2. *No allegations regarding an unsafe threshold level of microplastics.*

Plaintiff also lacks Article III standing because she fails to allege what level of microplastics must be present to present a risk to human health. *See general* Compl. Even if Plaintiff had adequately pled the quantity and type of microplastics purportedly present in the Products (she has not), such allegations would still be insufficient absent allegations establishing a threshold for unsafe levels of microplastics or that the quantity and type of microplastics present in the Products are likely to cause physical harm. In *Boysen v. Walgreen Co.*, for example, this Court dismissed another plaintiff's complaint for lack of standing in an analogous case because, while he "plead[ed] that arsenic and lead are harmful toxins, and that the products contain those toxins . . . he d[id] not expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm." 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012). The same shortcoming is dispositive to Plaintiff's claims here.

None of the studies Plaintiff cites establishes a threshold level of microplastic exposure that negatively impacts human health. In fact, the studies Plaintiff cites suggest that no established unsafe level of microplastics exists. *See, e.g.*, Marfella 2024 (cited in Compl. n.2) (concluding that microplastics "are emerging as a *potential* risk factor," but "[d]irect evidence that this risk extends to humans is lacking"); Balch 2024 (cited in Compl. n.23) ("[E]xperts say that little is known and understood about what impact these microplastics have on human health."); Hussain 2023 (cited in Compl. n.29) ("[T]here was no adequate toxicological information to quantify the dose-response relationship between microplastic ingestion and the risk or adverse effects in humans.").

### 3. *No allegations microplastics from the Products exceed an unsafe threshold.*

Plaintiff also does not allege that the level and type of microplastics contained in the Products exceed an unsafe level. This factual gap presents a further fatal disconnect between the Complaint's

6

allegations concerning potential (unproven) harms posed by microplastics *generally* and Plaintiff's core allegation that Campbell's Products *specifically* release *unsafe levels* of microplastics. *See Daly*, 2025 WL 672913, at * 6–7 ("plaintiffs' bare and (in the Court's view) unsupported allegation that Fiji Water contains microplastics is insufficient to nudge[ ] their claims across the line from conceivable to plausible."); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *10 (N.D. Cal. Apr. 16, 2024) (plaintiff's "repeated incantation of 'high,' 'unsafe,' and 'unlawful' levels of cadmium [wa]s not a sufficient substitute for factual allegations tying the level of cadmium in the Products to the supposed negative health risks and outcomes flowing from elevated exposure."). Because Plaintiff fails to allege facts sufficient to show the Products release harmful levels of microplastics when microwaved, her theory remains speculative, fails to cross the plausibility threshold, and must be dismissed.

### B.    Plaintiff does not plausibly allege that she paid a price premium for the Campbell's product she purchased.

Plaintiff's Complaint must also be dismissed because Plaintiff's conclusory assertions that she "would not have paid as much for the Products, had [she] known that the Products are not microwavable," and that Campbell's deceptive label "cause[d] consumers to pay a premium for perceived product quality and promised safety attributes," Compl. ¶¶ 18, 27(f), 15, are insufficient to support a price-premium theory of recovery. The Ninth Circuit has affirmed dismissal of  similar claims where, like here, "Plaintiffs did not allege how much they paid for the [product], how much they would have paid for it absent the alleged deception, whether [defendant] (as opposed to a third-party distributor) was responsible for any overpayment, or any other details regarding the price premium." *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). This is because "[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury." *La Barbera v. Olé Mexican Foods, Inc.*, 2023 WL 4162348, at *17 (C.D. Cal. May 18, 2023) (dismissing claims where the plaintiff failed to allege "the price she paid for any of the Products, the prevailing market price for the Products, or the prices of any competitors . . ."). Plaintiff's "[t]hreadbare allegations" here are not enough to show "an injury in fact" based on a price premium theory. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 225 (D.N.J. 2022).

7

**C.      Plaintiff lacks standing to seek injunctive relief because there is no reasonable likelihood of future injury.**

Plaintiff lacks standing to seek injunctive relief because she cannot show a concrete injury (as described above) or a real, immediate threat of being harmed again. "[T]o satisfy the standing requirement for injunctive relief, Plaintiffs must plausibly allege that they desire to purchase the Products again in the future, if labeled correctly." *See Miller v. Philips N. Am. LLC*, 2025 WL 582160, at \*4 (N.D. Cal. Feb. 20, 2025) (dismissing claim for injunctive relief due to inconsistent allegations regarding plaintiff's desire to repurchase). Here, Plaintiff alleges she "intends to purchase the Products in the future if she can be sure they deliver the advertised benefits and promised product attributes and do not release microplastics during ordinary use…" Compl. ¶ 27(g). But Plaintiff's own allegations foreclose any plausible likelihood that Plaintiff will actually purchase the Products again because the alleged "defect"—the Products being made of polypropylene plastic and intended for use in the microwave—is inherent and cannot be remedied. Given the allegations in the Complaint, it is implausible Plaintiff would purchase a polypropylene "microwaveable" food container in the future.

**II.      Plaintiff's Claims are Preempted by the USDA and FDA.**

Plaintiff's Complaint should also be dismissed because her claims are preempted by (1) the United States Department of Agriculture's Federal Meat Inspection Act and the Poultry Products Inspection Act and (2) the FDA's Federal Food, Drug, and Cosmetic Act. "State law is preempted 'to the extent of any conflict with a federal statute,' regardless of whether the conflict is express or implied." *Bruno*, 2024 WL 2794098, at \*2. "[W]hen a state law claim, however couched, would effectively require a manufacturer to include *additional or different* information on a federally approved label, it is preempted." *Id.*

**A.      Plaintiff's claims are preempted by the USDA's Federal Meat Inspection Act and the Poultry Products Inspection Act.**

The USDA's approval of the challenged label preempts Plaintiff's claims. The USDA is charged with inspecting meat and poultry products[3] and approving product labels before use. *See* 21

---

[3] The product Plaintiff purchased, Campbell's Homestyle Chicken Noodle Soup, is regulated by the FMIA and PPIA because at least 2% of the soup consists of chicken. *See* 9 C.F.R. § 381.15.

8

U.S.C. §§ 451, 601; 9 C.F.R. § 317.4(a). The FMIA and the PPIA preempt state laws that impose marketing, labeling, packaging or ingredient requirements that are additional or different than the requirements imposed under federal law. 21 U.S.C. §§ 467(e), 678.

Here, the USDA approved the label on the Product Plaintiff purchased, which is stamped with the USDA seal of approval.[4] *See* Compl. at 20 (USDA inspected stamp visible on bowl). Because meat and poultry cannot be sold if the product has a label that is false or misleading, *see* 21 U.S.C. §§ 602, 451, the USDA's approval constitutes an agency finding that Campbell's labels are neither false nor misleading. *Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *6 (M.D. Fla. Sept. 12, 2011) ("If the [USDA] had determined that the labels were false or misleading, Defendants' labels would not have been approved."). Plaintiff's Complaint must therefore be dismissed as preempted because Plaintiff's attempt to use state law to impose labeling requirements—namely requiring Campbell's to remove the "Microwavable" claim—is "in addition to" and "different than" the federally approved labeling. *See Meaunrit v. ConAgra Foods Inc.*, 2010 WL 2867393, at *7 (N.D. Cal. July 20, 2010) ("Because the pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether those instructions are accurate, the plaintiff's state causes of action are preempted by federal law."); *Barnes v. Campbell Soup Co.*, 2013 WL 5530017, at *5 (N.D. Cal. July 25, 2013) (holding defendant did not use false and misleading labels because its Natural Chicken Tortilla soup label received pre-approval by the USDA).

**B.    Plaintiff's claims are preempted by FDA's Federal Food, Drug and Cosmetic Act.**

The FDCA specifically authorizes the use of polypropylene polymers, like those in Campbell's Products, in food-contact applications. Accordingly, Plaintiff's claims, which depend on her allegation that Campbell's polypropylene packaging is unsafe, are preempted. 21 U.S.C. § 343-1(a)(5) (no state may "directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under . . . this title that is not identical" to federal requirements). Courts considering similar microplastics-based consumer claims have dismissed them on this basis. *See Bruno*, 2024 WL 2794098, at *3 (holding plaintiff's claims preempted because they "impose

---

[4] The USDA approves labels on Products containing at least 2% cooked poultry meat. See 9 C.F.R. § 381.15.

9

obligations that go beyond those provided in the FDCA"); *Baker*, 2019 WL 960204, at *2.

21 C.F.R § 177.1520 states the "polymers listed in paragraph (a) of this section," which includes polypropylene, "may be *safely* used as articles or components of articles intended for use in contact with food, subject to the provisions of this section." *Id.* (emphasis added). The approved "conditions of use" for polypropylene polymers includes "high temperature heat-sterilized (e.g., over 212ºF)." *See* 21 C.F.R. § 176.170, Table 2, Condition A. Plaintiff's theory of liability is therefore preempted by FDA regulations, which specify that polypropylene plastic "may be safely used" as food-contact substances. 21 C.F.R. § 177.1520. Plaintiff's theory is also undermined by the FDA's findings in its 2024 Statement, where it concluded that "[c]urrent scientific evidence does not demonstrate that levels of microplastics or nanoplastics detected in foods pose a risk to human health" and that "[t]here is not sufficient scientific evidence to show that microplastics and nanoplastics from plastic food packaging migrate into foods and beverages." FDA Statement.

The FDA has already determined the Products are *safe* under their "intended conditions of use," including microwaving. Plaintiff's contrary claims and challenge to the "Microwavable" label would require Campbell's to remove statements regarding a usage that the FDA has approved. That would impose requirements that differ from and exceed federal law, rendering her claims preempted.

### III.    Plaintiff Fails to State a Claim Under the UCL, FAL, or CLRA.

#### A.    Plaintiff's statutory fraud claims fail Rule 9(b)'s heightened pleading standard.

Plaintiff must meet the heightened pleading standard of Rule 9(b) for her claims sounding in fraud, including her UCL, FAL, and CLRA statutory consumer fraud claims. *See Kearns*, 567 F.3d at 1124. To meet this standard, a plaintiff must identify "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh*, 726 F.3d at 1133. Whether evaluated under Rule 8(a) or 9(b), Plaintiff's conclusory assertion that the Products "release[] harmful microplastics directly into the soup when heated" and microplastics may cause "serious health risks," fails to meet this standard. Compl. ¶¶ 14, 48.

Neither Plaintiff's allegations nor her cited studies support a reasonable inference that Campbell's Products leach microplastics in types or quantities that pose health risks. Plaintiff fails to allege the amount of microplastics required to cause any health risks, whether the Products release

10

such amounts when microwaved, or how any such amounts compare to other polypropylene products. *See In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024).

The same critical defect was present in *Cortez*, where the plaintiff alleged that sterilizing polypropylene baby bottles and sippy cups at high temperatures "significantly increase[d]" microplastic leaching into their contents. 2025 WL 1452561, at *1. But, like here, the *Cortez* plaintiff relied only on generalized allegations about the health risks of microplastic bioaccumulation, without linking those risks to the defendant's products, leaving the Court to guess "(1) the amount of microplastics that are released by defendant's Products, exposed to children, and ultimately remain and bioaccumulate in their bodies, [and] (2) the negative health effects risked by that amount." *Id.* at *5. Accordingly, the court dismissed the claims for failure to plausibly allege that the products leached microplastics in quantities harmful to human health. *Id.*; *see also Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 801 (N.D. Cal. 2024) (rejecting plaintiff's "conclusory allegation that lead content, measured at *any* level" in the challenged products could support a misrepresentation claim because that "could produce a 'preposterous' result").

**B.      Plaintiff's "misrepresentation" claims fail because Plaintiff fails to plead a false statement.**

Plaintiff's misrepresentation claims also fail because Plaintiff fails to allege, as she must, that a reasonable consumer would be misled by the "Microwaveable" label. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).[5] To satisfy the reasonable consumer test, a plaintiff "must show that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted). This test requires "more than a mere possibility that [a defendant's] label might conceivably be misunderstood by some few consumers"; rather, the standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

Plaintiff's claim rests on the theory reasonable consumers would conflate "Microwavable" on the Products' labels with a representation the Products are free of microplastics or would not release

---

[5] Where UCL, FAL and CLRA claims "arise from the same factual allegations," they "rise or fall together based on the plausibility of those allegations" and are evaluated together. *Biederman v. FCA US LLC*, 765 F. Supp. 3d 920, 941–42 (N.D. Cal. 2025).

11

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD

any microplastics when used as directed. Compl. ¶¶ 15, 18, 40, 50. But such allegations impermissibly invent a representation Campbell's never made. The "Microwavable" statement conveys only that the Products *can* be microwaved—a representation consistent with current science and FDA guidance. Courts consistently reject attempts to impose liability based on strained or implausible interpretations of product labels. *See Correia v. Johnson & Johnson Consumer Inc.*, 2019 WL 2120967, at *4 (C.D. Cal. May 9, 2019) (holding plaintiff failed to adequately plead her CLRA, UCL, and FAL claims because plaintiff "invents a misrepresentation that Defendant did not make"); *Miller*, 2025 WL 582160, at *2 ("Representations must be analyzed according to what they actually say and not based on their implied meaning.") (internal alterations omitted).

Plaintiff's own Complaint confirms that microplastics "form when solid plastics break down through abrasion, degradation, or chemical processes such as exposure to heat." Compl. ¶ 30. Because the soup bowls are plastic, Plaintiff's assertion that reasonable consumers would read "Microwavable" to mean the bowls are free from microplastics, or do not release any microplastics when microwaved, is implausible. Courts have recognized that "it is implausible for any reasonable consumer to believe that plastic products are free of all microplastics." *Felsenthal,* 2026 WL 879337, at *4; *Slowinski*, 744 F. Supp. 3d at 886 (dismissing consumer fraud claims because "microplastics are in just about everything . . . When simply breathing air puts you at risk of inhaling microplastics, it's unreasonable to assume that your spring water won't have any microplastics").

Because no reasonable consumer would be misled by the Products' "Microwavable" statement, it cannot serve as the basis for Plaintiff's misrepresentation claims. *See, e.g.*, *Miller*, 2025 WL 582160, at *2 (finding the alleged misrepresentation could not serve as the basis for plaintiffs' claims because "such a statement that the Products are free of BPAs cannot be extrapolated to imply that the Products are devoid of all harmful plastic byproducts"); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (affirming dismissal of deceptive labeling claims, noting "a plaintiff's unreasonable assumptions about a product's label will not suffice").

**C.    Plaintiff's "fraudulent omission" claims fail because the Complaint does not plausibly allege the defect created an unreasonable safety hazard or that the defect is material and central to the Products' function.**

To state an omission claim Plaintiff must allege either (1) the omission is contrary to a

12

representation made by Campbell's or (2) that Campbell's had a duty to disclose the information it omitted. *In re Plum Baby Food*, 2024 WL 1354447, at \*4. Plaintiff does not contend the alleged omission contradicts any representation made by Campbell's, so the first prong is not at issue.

Under the second prong, a duty to disclose arises only in two situations—(1) where "the defect at issue relates to an unreasonable safety hazard" or (2) where a defect is "material" and "central to the product's function." *In re Trader Joe's*, 726 F. Supp. 3d at 1169 (holding plaintiffs failed to adequately plead the presence of heavy metals in chocolate products posed an unreasonable safety hazard or that products were unfit for human consumption). Plaintiff's omission theory fails both tests.

### 1.     *Plaintiff does not allege an unreasonable safety hazard.*

To plead an "unreasonable safety hazard," Plaintiff must allege and link *specific* levels of microplastic leaching from Campbell's Products to *actual* health risks. *See id.* at 1170 ("[A]lleging that Heavy Metals can pose human health risks at some *unidentified* level does not mean the levels in [defendants' chocolates] pose a human health risk. . . .") (emphasis added); *Cortez*, 2025 WL 1452561, at \*5 (dismissing for failure to plead an unreasonable safety hazard where no threshold level of harmful microplastic exposure was identified); *Daly*, 2025 WL 672913, at \*1 (dismissing consumer fraud claims because "'plaintiffs' conclusory and unsupported allegations that Fiji Water is contaminated with microplastics . . . is insufficient to give rise to a plausible claim for relief'"); *Hayden*, 2024 WL 1643696, at \*8–9 (no plausible claim where no connection between the levels of cadmium at issue in the cited studies levels and the amounts of cadmium allegedly contained in the [] products).

Here, as explained above, Plaintiff's Complaint generically alleges the Products release microplastics when microwaved, but provides no factual support for even that basic assertion. Further, the Complaint fails to allege a threshold for unsafe levels of microplastics or that the Products surpass any such threshold. *See* § I.A. *supra*.[6] Plaintiff's omission-based fraud claim fails for the same reason.

### 2.     *Plaintiff does not allege a defect central to the Products' function.*

Plaintiff also fails to satisfy the "central to the product's function" prong because, even

---

[6] Plaintiff also cannot rely on a "no safe level" theory because this would impermissibly broaden the duty to disclose to any potential—and not just an unreasonable—safety hazard. *See Krystofiak*, 737 F. Supp. 3d at 801 ("[The statement] that there is no safe lead level . . . [would] render[ ] literally any alleged level of lead actionable.").

13

accepting Plaintiff's allegations as true, the Products remain fully capable of performing their intended function of conveying ready-to-eat soup. In *Cortez*, the court held that the alleged release of microplastics from heated propylene baby bottles did not a trigger a duty to disclose because, even if true, the "baby bottles and sippy cups continue to deliver their liquid contents despite the presence of microplastics." 2025 WL 1452561, at *5. So too here: the alleged presence of microplastics is not central to the function of the Products because the bowls of soup continue to function as soup for consumption despite the alleged presence of microplastics. *See also In re Plum Baby Food,* 2024 WL 1354447, at *6 (holding the presence of heavy metals was not a defect central to the function of defendant's baby food because "even if consumers find the presence of these trace contaminants to be of material concern, the Baby Food continues to function as food").

Because Plaintiff fails to plausibly allege the purported defect poses an unreasonable safety risk or is central to the Products' function, her omission claims should be dismissed.

**D.      Plaintiff does not allege Campbell's knew or should have known of the purported defect.**

UCL, FAL, and CLRA claims require allegations that the defendant knew or should have known of the purported defect at issue. *Cortez,* 2025 WL 1452561, at *6. However, "courts are reluctant to impute actual knowledge of a product defect based on vague, sweeping statements about industry research and general knowledge, which are insufficient to allege that defendant knew about any specific defect." *Id.* (internal quotation and alterations omitted). Plaintiff does nothing more. She alleges in conclusory fashion Campbell's had "exclusive knowledge" the Products "release microplastics directly into the soup when microwaved" based on its alleged "control over the manufacturing, design, distribution, and safety testing of the Product." Compl. ¶ 68. Such conclusory allegations fail as a matter of law. *See Cortez,* 2025 WL 1452561, at *6.* (finding plaintiffs' allegations that defendant had exclusive knowledge based on its "control of the manufacturing, design, distribution, and safety testing of the Products" were "too conclusory to satisfy Rule 9(b)"); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) ("Generalized allegations with respect to exclusive knowledge are insufficient to defeat a dismissal motion.").

**IV.      Plaintiff's Breach of Warranty Claims Fail for the Same Reasons as Plaintiff's Statutory Fraud Claims.**

14

Plaintiff's breach of express and implied warranty claims should be dismissed for the same reasons as Plaintiff's statutory fraud claims. To state a claim for breach of an express warranty, Plaintiff must allege a breach of "the exact terms of an express warranty" by identifying a "specific and unequivocal written statement" that is untrue. *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021). The only written statement Plaintiff challenges is the Products' label representation that the Products are "Microwavable." Compl. ¶ 163. But for the reasons explained above, Plaintiff does not (and cannot) allege this statement is untrue. *See* § III.B. *supra*. Plaintiff does not allege that she could not microwave the Product, and the "Microwavable" label makes no representations about microplastics and does not guarantee the absence of ubiquitous environmental substances. To the extent this representation created an express warranty, the warranty is that the Products are microwavable—which science and the FDA agree are true. *See Smith v. LG Elecs. USA, Inc.*, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014) (finding no breach of express warranty where the plaintiff's allegations did not "render[] the alleged express warranties untrue").

Plaintiff also cannot state a claim for breach of implied warranty as she has failed to allege a defect that impairs the central function of the Product for the reasons explained above. *See* § III.B.2. *supra.* "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Miller*, 2025 WL 582160, at *5. The Products' ordinary purpose is to provide food, and Plaintiff does not allege they fail to do so.

## V.    Plaintiff's Unjust Enrichment Claim is Wholly Derivative and Fails for the Same Reasons as Plaintiff's Statutory Fraud Claims.

Plaintiff's unjust enrichment claim should also be dismissed because it is wholly derivative of her other claims and rests on the same alleged conduct. *Cortez*, 2025 WL 1452561, at *9. Where, as here, an unjust enrichment is premised on the same facts as UCL, FAL, and CLRA claims, it "rises and falls" with those claims. *Id.* Because Plaintiff's underlying claims fail, her unjust enrichment claim necessarily fails as well.

## CONCLUSION

For these reasons, Campbell's respectfully requests the Court dismiss Plaintiff's Complaint in its entirety, without leave to amend.

15

Dated:  June 29, 2026                        Respectfully submitted,

                                       **SHOOK, HARDY & BACON, LLP**

By: */s/_Tammy Webb*_____

Tammy B. Webb
Mitch Engel
Aubrey Kramer
Caitlin Crable

*Attorneys for Defendant The Campbell's Company*

DEFENDANT THE CAMPBELL'S COMPANY'S MOTION TO DISMISS
CASE NO. 3:26-CV-03097-JD